**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

**NANCY TRAUTERMAN**,

                Plaintiff,

    v.

**MICHAEL J. ASTRUE**,
Commissioner of Social Security,

                Defendant.

**06cv1482**
**ELECTRONICALLY FILED**

**MEMORANDUM OPINION**

**September 14, 2007**

    **I.**      **Introduction**

Plaintiff, Nancy Trauterman, brings this action pursuant to 42 U.S.C. § 405(g) and

1383(c)(3) of the Social Security Act ("Act"), seeking review of the final determination of the

Commissioner of Social Security ("Commissioner") denying her application for Supplemental

Security Income ("SSI") and Disability Insurance Benefits ("DIB").  Consistent with the

customary practice in the Western District of Pennsylvania, the parties have submitted

cross-motions for summary judgment on the record developed at the administrative proceedings.

    After careful consideration of the Administrative Law Judge's (ALJ's) Decision, the

memoranda of the parties, and the entire record, the Court finds the ALJ's decision is supported

by substantial evidence, and therefore will grant the Commissioner's motion for summary

judgment, deny plaintiff's motion for summary judgment and enter judgment in favor of the

Commissioner.

## II.    Procedural History

On March 26, 2004, plaintiff applied for SSI and DIB, alleging disability beginning September 30, 2003 due to disorders of the back and arthropathies.  On July 28, 2004, plaintiff timely requested a hearing after her initial claim was denied.  The hearing was held before ALJ James Pileggi on December 7, 2005, at which plaintiff, represented by a non-attorney representative, testified, as did a vocational expert (VE).  On May 17, 2006, the ALJ denied plaintiff's claim, finding that although she had severe physical impairments, none of the impairments met or were medically equal to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

The ALJ further found that plaintiff retained the RFC to perform work at the light exertional level but she is not able to work in environments with heights, dangerous machinery, constant manipulation, foot controls nor is she able to use motor vehicles.  Plaintiff is able to perform the work of a sales clerk (classified as light and unskilled), a position that she has occupied in the past.

On September 5, 2006, the Appeals Council affirmed the ALJ's decision, thus becoming the final decision of the Commissioner.  Plaintiff then filed her complaint herein seeking judicial review of the Commissioner's final decision.

## III.    Statement of the Case

The record demonstrates that plaintiff has gone through an extensive battery of medications and procedures to combat a series of symptoms including chronic pain (fibromyalgia), numbness, cervical strain, muscle spasms of her neck, back and shoulders,

tension headaches, and decreased memory.  Tr. 135-37, 154-65, 198-220.[1]  The ALJ found that

the record supports the finding of severe impairments which consisted of disorders of the back

(discogenic and degenerative) and arthropathies.  Tr. 17.  With regard to plaintiff's depression,

the ALJ found that although the medical evidence does show that she experienced and was

diagnosed with some depression, plaintiff did not attribute the disability to her depression.

The ALJ discussed portions of plaintiff's testimony where she admitted to having

depression but not to the point where she needed medication for it at the time of hearing and to

not seeking treatment from a mental health professional.  Tr. 42 and 46.  The ALJ also

discounted plaintiff's testimony as to the extent of her impairments based upon the lack of

objective medical evidence showing significant abnormalities in motor strength, sensation,

reflexes, or any significant functional limitations due to significant musculoskeletal

abnormalities.  Tr. 19.   The ALJ also evaluated the medical records of plaintiff's primary care

physicians, physical therapists and the neurologist she was referred to and found no objective

medical evidence to support severe mental impairments.  The ALJ discussed the opinions of two

treating physicians, who were not mental health care professionals, and explained why he did not

accept their legal opinions that plaintiff was disabled due to her depression.

The ALJ made the following specific findings:

1.    The claimant met the insured status requirements of the Social Security Act
      through June 30, 2006.

2.    The claimant has not engaged in substantial gainful activity at any time relevant to
      this decision.

3.    Following the claimant's alleged onset of disability date of September 30, 2003,

---

[1]Tr. refers to the administrative transcript.

the claimant continued to work part-time as a produce worker in a super market, 20-25 hours per week, 4-5 days per week, until March 2004. Although the work is not viewed as substantial gainful activity, it is indicative of the claimant's ability to perform some work activity.

4.      The claimant has a poor work history, having worked a total of only eleven years in her lifetime, confirmed by the Earnings Record, which shows lifetime earnings of only $81,858.71. The Earnings Record also shows gaps of years during which the claimant reported no earnings whatsoever, raising questions as to the claimant's desire and motivation to work irrespective of any impairment.

5.      Although the claimant did not allege disability due to depression, the medical evidence shows that she experiences and was diagnosed with some depression. The medical evidence also shows that this impairment is not severe. The claimant does not have any mental functional limitations.

6.      Claimant is 50 years of age.

7.      Claimant has a high school education.

8.      As to the claimant's residual functional capacity, she is capable of performing work at the light exertional level. She cannot work at heights, around dangerous machinery, nor can she use motor vehicles. She cannot perform constant manipulation and cannot use foot controls.

9.      The claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but the claimant's statements concerning the intensity, duration and limiting effects of theses symptoms are not entirely credible.

10.     The claimant has not been under a disability, as defined in the Social Security Act, from through the date of this decision.

11.     Based on the application for a period of disability and Disability Insurance Benefits protectively filed on March 26, 2004, the claimant is not disabled.

12.     Based on the application for Supplemental Security Income protectively filed on March 26, 2004, the claimant is not disabled.

Tr. 16-27.

IV.     **Standards of Review**

Judicial review of the Commissioner's final decisions on disability claims is provided by statute.  42 U.S.C. §§ 405(g) and 1383(c)(3).  Section 405(g) permits a district court to review transcripts and records upon which a determination of the Commissioner is based.  Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a).  *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

Substantial Evidence

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive.  *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v. Secretary of HHS*, 722 F.2d 1150, 1152 (3d Cir. 1983).  The district court's function is to determine whether the record, as a whole, contains substantial evidence to support the Commissioner's findings.  See *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted).  See *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Ventura*, 55 F.3d at 901 (quoting *Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir. 1988).

The Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), quoting *Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993), quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. See *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder. *Rutherford*, 399 F.3d at 552. In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini*, 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87; parallel and other citations omitted).

<u>Five Step Determination Process</u>

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987);  42 U.S.C. § 423 (d)(1) (1982).  Similarly, to qualify for SSI, the claimant must show "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential evaluation.  20 C.F.R. §§ 404.1520 and 416.920 (1995).  See *Sullivan*, 493 U.S. at 525.  The Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir.1999):

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C .F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. . . . In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520©. If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.
>
> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .

If the claimant is unable to resume her former occupation, the evaluation moves to the final step [five]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .  Plummer, 186 F.3d at 428 (italics supplied; certain citations omitted).  See also Rutherford, 399 F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)).

If the claimant satisfies step 3, she is considered per se disabled. If the claimant instead satisfies step 4, the burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1)  by introducing medical evidence that the claimant is disabled per se because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is equivalent to a Listed Impairment.  See *Heckler v. Campbell*, 461 U.S. 458, 460 (1983);  *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ."  Campbell, 461 U.S. at 461

-8-

(citing 42 U.S.C. § 423 (d)(2)(A)).  In order to prove disability under this second method,

plaintiff must first demonstrate the existence of a medically determinable disability that

precludes him or her from returning to his or her former job (Steps 1-2, 4).  *Stunkard*, 841 F.2d at

59;  *Kangas*, 823 F.2d at 777.  Once it is shown that he or she is unable to resume his or her

previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given

plaintiff's mental or physical limitations, age, education and work experience, he or she is able to

perform substantial gainful activity in jobs available in the national economy.  Campbell, 461

U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003); *Stunkard*, 842 F.2d at 59;

*Kangas*, 823 F.2d at 777.

        Vocational Expert - Hypothetical Questions

        The determination of whether a claimant retains the RFC to perform jobs existing in the

workforce at step 5 is frequently based in large measure on testimony provided by the vocational

expert.  Rutherford, 399 F.3d at 553, citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir.

1984) (citations omitted).  Where a hypothetical question to the VE accurately sets forth all of a

claimant's significant impairments and restrictions in activities, physical and mental, as found by

the ALJ or as  uncontradicted on the medical record, the expert's response as to the existence of

jobs in the national economy which the claimant is capable of performing may be considered

substantial evidence in support of the ALJ's findings on claimant's RFC. See, e.g., *Burns v.

Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002), citing *Podedworny*, 745 F.2d at 218 and *Chrupcala

v. Heckler*, 829 F.2d, 1276 (3d Cir. 1987) (leading cases on the use of hypothetical questions to

VEs).  See also *Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical

questions include medical impairments, age, education, work experience and RFC); *Boone*, 353

F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory testimony from a vocational expert.'").  Objections to the adequacy of an ALJ's hypothetical questions to a vocational expert "often boil down to attacks on the RFC assessment itself." *Rutherford*, 399 F.3d at 554 n.8.

Additionally, the ALJ will often consult the Dictionary of Occupational Titles ("DOT"), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform." *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002); see also *Id*. at 126 (The "Social Security Administration has taken administrative notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. § 416.966(d) (2002)).  While an unexplained conflict between a VE's testimony and the relevant DOT job descriptions does not necessarily require reversal or remand of an ALJ's determination, the Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to do so will necessitate a remand.  Boone, 353 F.3d at 206.

<u>Multiple Impairments</u>

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's

eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), citing 42 U.S.C. § 423(d)(2)©, and 20 C.F.R. § § 404.1523, 416.923).

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments, provides:

In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is equivalent to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971) . . . ."). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a listed impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and specifically explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. Fargnoli , 247 F.3d at 40 n. 4, citing

Burnett, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was needed to make a sound determination."  Ferguson, 765 F.2d 36.

<u>Claimant's Subjective Complaints of Impairments and Pain</u>

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings.  *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected.  See *Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984);  *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981).  He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not confirmed fully by objective medical evidence.  See *Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993);  *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir.1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. E.g., *Carter v. Railroad Retirement Board*, 834 F.2d 62, 65, relying on *Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), relying on

-12-

*Dobrowolsky*. Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work.  This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.   See 20 C.F.R. § 404.1529©.  *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision.  See *Cotter*, 642 F.2d at 705. Our Court of Appeals has stated:  "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations.   The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." Schaudeck, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight.  *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195.  That is, while "there must be objective medical evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself." *Green*, 749 F.2d at  1070-71 (emphasis added), quoted in *Mason*, 994 F.2d at 1067.  Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain without contrary medical evidence.  *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985);  *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d

-13-

Cir. 1987); *Akers v. Callahan*, 997 F.Supp. 648, 658 (W.D.Pa. 1998).  "Once a claimant has

submitted sufficient evidence to support his or her claim of disability, the Appeals Council may

not base its decision upon mere disbelief of the claimant's evidence.  Instead, the Secretary must

present evidence to refute the claim.  See *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981)

(where claimant's testimony is reasonably supported by medical evidence, the finder of fact may

not discount the testimony without contrary medical evidence)."  *Williams v. Sullivan*, 970 F.3d

1178, 1184-85 (3d Cir. 1992) (emphasis added), cert. denied 507 U.S. 924 (1993).

        In making his or her determination, the ALJ must consider and weigh all of the evidence,

both medical and non-medical, that support a claimant's subjective testimony about symptoms

and the ability to work and perform activities, and must specifically explain his or her reasons for

rejecting such supporting evidence.  *Burnett v. Commissioner of Social Security*, 220 F.3d 112,

119-20 (3d Cir. 2000). Moreover, an ALJ may not substitute his or her evaluation of medical

records and documents for that of a treating physician; "an ALJ is not free to set his own

expertise against that of a physician who presents competent evidence" by independently

"reviewing and interpreting the laboratory reports . . . ."  *Ferguson v. Schweiker*, 765 F.2d 31, 37

(3d Cir. 1985).

        State Agency Medical and Psychological Consultants

        Medical and psychological consultants of a state agency who evaluate a claimant based

upon a review of the medical record "are highly qualified physicians and psychologists who are

also experts in Social Security disability evaluation. Therefore, administrative law judges must

consider findings of State agency medical and psychological consultants or other program

physicians or psychologists as opinion evidence, except for the ultimate determination about

-14-

whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(I). See also SSR 96-6p: Titles II

and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and

Psychological Consultants ("1. Findings of fact made by State agency medical and psychological

consultants and other program physicians and psychologists regarding the nature and severity of

an individual's impairment(s) must be treated as expert opinion evidence of non-examining

sources at the administrative law judge and Appeals Council levels of administrative review. 2.

Administrative law judges and the Appeals Council may not ignore these opinions and must

explain the weight given to these opinions in their decisions.").

### V.   Discussion

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord

treating physicians' reports great weight, especially 'when their opinions reflect expert judgment

based on a continuing observation of the patient's condition over a prolonged period of

time.'*Plummer*, 186 F.3d at 429 (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d  Cir.1987))

. . . ." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted).  The

ALJ must weigh conflicting medical evidence and can chose whom to credit, but "cannot reject

evidence for no reason or for the wrong reason." *Id.* at 317, quoting Plummer, 186 F.3d at 429

(additional citations omitted).  The ALJ must consider all medical findings that support a treating

physician's assessment that a claimant is disabled, and can only reject a treating physician's

opinion on the basis of contradictory, medical evidence, not on the ALJ's own credibility

judgments, speculation or lay opinion.  *Morales*, 225 F.3d at 317-318 (citations omitted).

Moreover, the Commissioner/ALJ must "explicitly" weigh all relevant, probative and

available evidence. . . . [and] must provide some explanation for a rejection of probative

evidence which would suggest a contrary disposition. . . . The [Commissioner] may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects. *Adorno*, 40 F.3d at 48 (emphasis added; citations omitted).  See also *Fargnoli*, 247 F.3d at 42-43 (although ALJ may weigh conflicting medical and other evidence, he must give some indication of the evidence he rejects and explain the reasons for discounting the evidence; where ALJ failed to mention significant contradictory evidence or findings, Court was left to wonder whether he considered and rejected them, or failed to consider them at all, giving Court "little choice but to remand for a comprehensive analysis of the evidence consistent with the requirements of the applicable regulations and the law of this circuit. . . .");  *Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him. . . .  Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (i) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination or decision of disability. Compare 20 C.F.R. §404.1527(a-d) (2002)

(consideration and weighing of medical opinions) with 20 C.F.R. §404.1527(e) (2002)

(distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case

record," and states the circumstances in which an opinion of a treating source is entitled to

"controlling weight." 20 C.F.R. §404.1527(b), (d) (2002).  Medical opinions on matters reserved

for the Commissioner are not entitled to "any special significance," although they always must be

considered. 20 C.F.R. §404.1527(e)(1-2) (2002). The Commissioner's Social Security Ruling

("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to

Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and

XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail

the distinction between medical opinions entitled to controlling weight and those reserved to the

Commissioner.

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled

to controlling weight does not mean that the opinion is rejected. It may still be entitled to

deference and be adopted by the adjudicator." SSR 96-29, Purpose No. 7. Where a medical

opinion is not entitled to controlling weight or special significance because it is on an issue

reserved for the Commissioner, these Social Security Rulings require that, because an adjudicator

is required to evaluate all evidence in the record that may bear on the determination or decision

of disability, "adjudicators must always carefully consider medical source opinions about any

issue, including opinions about those issues that are reserved to the Commissioner," and that

such opinions "must never be ignored. . . ." SSR 96-5p, Policy Interpretation, (emphasis added).

Moreover, because the treating source's opinion and other evidence is "important, if the evidence

does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

A medical opinion also is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527 (d)(2). Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527 (d)(1-6).

Plaintiff argues in her brief in support of summary judgment that the ALJ did not properly implement step two of the five-step process, that he overlooked portions of the record supporting the fact that plaintiff's depression is a significant contributing factor to her fibromyalgia symptoms, and the ALJ erred in finding that "her depression was 'non-severe', causing only a minimal impact on her ability to work." Document no. 9,  p. 7. As noted, the ALJ found that plaintiff's depression was not severe because "it did not significantly limit Plaintiff's capacity to perform basic work activities such as understanding, carrying out, and remember simple instructions, responding appropriately to supervision, co-workers and work situations, and dealing with changes in a routine work setting." Commissioner's Brief for Summary Judgment, document no. 12, p. 13.

Listing 12.00, Mental Impairments, states the necessary steps for evaluating disability based on mental disorders.  This evaluation requires, "documentation of a medically determinable impairment(s), consideration of the degree of limitation such impairment(s) may impose on the individual's ability to work, and consideration of whether these limitations have lasted or are expected to last for a continuous period of at least 12 months."  Listing 12.00, 20 C.F.R. Regulations No. 4 Subpt. P, App. 1.  Listing 12.04, Affective disorders, describes the disorders in detail and provides the necessary criteria for designation of an affective disorder. Listing 12.04 is characterized as follows:

> [A] disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> > A. Medically documented persistence, either continuous or intermittent, of one of the following:
> >
> > 1. Depressive syndrome characterized by at least four of the following:
> >
> > a. Anhedonia or pervasive loss of interest in almost all activities; or
> > b. Appetite disturbance with change in weight; or
> > c. Sleep disturbance; or
> > d. Psychomotor agitation or retardation; or
> > e. Decreased energy; or
> > f. Feelings of guilt or worthlessness; or
> > g. Difficulty concentrating or thinking; or
> > h. Thoughts of suicide; or
> > i. Hallucinations, delusions, or paranoid thinking; or
> >
> > 2. Manic syndrome characterized by at least three of the following:
> >
> > a. Hyperactivity; or
> > b. Pressure of speech; or
> > c. Flight of ideas; or

-19-

d. Inflated self-esteem; or
e. Decreased need for sleep; or
f. Easy distractibility; or
g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
h. Hallucinations, delusions or paranoid thinking; or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Listing 12.04, 20 C.F.R. Regulations No. 4 Subpt. P, App. 1.

The ALJ did consider and address the record which includes the medical opinions of

plaintiff's treating sources, namely her primary care physicians, Dr. John Schibli, D.O. and Dr. Benjamin Shipton, D.O., her neurologist, Dr. Iris Brossard, M.D., and physical therapy specialists as well as the expert testimony of the VE and the findings of Dr. Kar, who reviewed the record for the state agency.   Dr. Schibli noted on several occasions that plaintiff's symptoms were amplified by her depression.  On June 22, 2004, Dr. Schibli wrote that ". . . a lot of her chronic pain in the upper cervical thoracic and lumbar spine was made worse by her mental status." Tr. 211.   Again, on September 28, 2004, Dr. Schibli opined in a medical questionnaire that plaintiff ". . . had a very poor affect, very poor self-esteem, aches and pain, which were somewhat due to fibromyalgia, but made worse by her depressive symptomotology." Tr. 207. Plaintiff was diagnosed with chronic depression and went through a series of medications including Effexor XR, Lexapro, and Cymbalta.  Dr. Schibli noted that plaintiff's "fibromyalgia was augmented by her depressive symptomotology, which augments all of her symptoms" and further opined that she has been on ". . . numerous muscle relaxants [and] been seen by orthopedics, neurology, rheumatology; all without success [and he feels] . . . she is never going to return to work due to the combination of her depression [and] chronic fibromyalgia."  Tr. 202 and 205.  Dr. Brossard, also noted on a February 11, 2004 visit that although plaintiff ". . . was alert and cooperative [and her] speech, language, memory, and fund of knowledge was normal, [she also] . . . had a somewhat flat affect." Tr. 162.

These medical opinions are to be accorded substantial weight, but not to any special significance, because they are on matters reserved to the Commissioner.  A medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as the claimant is "disabled" or "unable to work," is not dispositive or controlling.  *Adorno*, 40 F.3d at

47-48, citing *Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir. 1990) ("this type of [medical]

conclusion  cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by

your physician that you are disabled or unable to work does not mean that we will determine that

you are disabled. We have to review the medical findings and other evidence that support a

physician's statement that you are disabled.") (internal citations omitted).

The ALJ thoroughly discussed and evaluated the medical evidence, and found that the

opinions of her treating physicians regarding depression were not supported and were, in fact,

contradicted by objective medical evidence of record.  The ALJ stated:

> Initial progress notes, covering the period from February to November 2003,
> from Dr. Shibley [sic] and Dr. Shipton . . . make no mention of the claimant
> complaining of any depression/depressive symptoms or of any observed
> depression/depressive symptoms by her treating doctors.  Additional progress
> notes, in January 2004, merely note that the claimant was somewhat soft
> spoken and somewhat withdrawn and, although including **mild** anxiety and
> **mild** depression in her diagnosis, Dr. Shibley [sic] did not provide her with any
> medication for any mental condition or refer her for professional mental health
> treatment.  At follow-up later in January, Dr. Shibley [sic] made no mention of
> **any** complaints form [sic] the claimant or observed signs of depression, and did
> not list any mental health condition as a diagnosis.  During the neurological
> evaluation in February 2004, Dr. Brussard [sic] noted only a somewhat flat
> affect and described the claimant as alert and oriented and demonstrating
> **normal** speech, language, memory, and fund of knowledge.
>
>        \*   \*   \*
>
> [D]espite the lack of any consistent diagnosis of depression and the fact that
> the depression has always been described as "mild," June 2004 progress notes
> stated that the claimant has "chronic depression," and that her Lexapro dosage .
> . . was increased from 10 to 20 mg.  The same progress notes report, however,
> that the claimant was then taking care of her two grandchildren at home, *with*
> *no mental limitations in providing their care*.  Additionally, while noting that
> she **might** need counseling in the future, there is no objective medical evidence
> that Dr. Shibley [sic], or any doctor, ever referred the claimant for professional
> mental health treatment or that the claimant herself ever sought/received
> professional mental health treatment.

* * *

[Dr. Shilbli] linked her depression to her pain, and although he mentioned the possibility of a pain consultation, there is no objective medical evidence that the claimant ever underwent such an evaluation or that she was referred for professional mental health treatment. . . .  Dr. Shibley [sic] provided no objective medical evidence or rationale for any of these statements and while he stated he would send her to a chronic pain specialist, as well as consider getting her involved with counseling, there is no objective medical evidence in record that he did either.

* * *

Moreover, while Dr. Shibley [sic] opined in a February 2005 progress note that the claimant would never return to work due, in part, to depression, he failed to even mention depression on his medical assessments as to claimant's ability to work and made no mention in any progress notes or medical records that the claimant actually experience **any functional limitations due to depression or any mental condition.**

* * *

Therefore, based on the totality of the evidence, the undersigned finds that the claimant's depression in non-severe and that the claimant has no severe mental impairment or any mental functional limitations.

Tr. 17-18.

Furthermore, plaintiff also testified that she was not depressed to the point where she needed medication and that neither Dr. Shibli or Shipton informed her that her "emotional condition may be contributing to the amount of pain" she was experiencing.  Tr. 46.  She also testified that she has not had any kind of mental or emotional problem for which she has had to seek treatment from a mental health professional.  Tr. 42.  And, as the ALJ noted, plaintiff continued to work substantial hours at part time employment following her claimed onset date of disability, which supports his finding that she was capable of performing full time work despite her depression and pain of fibromyalgia.

The Court finds that the ALJ considered all of the relevant evidence and also provided reasons for not placing substantial weight of the opinions of plaintiff's treating sources including plaintiff's own testimony of the role depression played in her capabilities, the lack of evidence showing that plaintiff did experience functional limitations as described in the "B" criteria of Listing 12.04, and plaintiff's engagement in normal activities of daily living such as watching her two grandchildren and refraining from lifting only the 4-year old.

Plaintiff also argues that the ALJ erred in denying plaintiff's claim of disability based on fibromyalgia and in failing to incorporate all of plaintiff's individual limitations and complaints. It is undisputed that plaintiff suffers from fibromyalgia; the ALJ found as such but determined that there was little objective medical evidence to support a determination that it was disabling. He also found that she had the residual functional capacity that allowed her to perform work at a light exertional level.  Tr. 19.

Plaintiff asserts that the ALJ failed to consider her subjective complaints of pain.  Pain, however, is not conclusive as evidence of disability.  There must also be the presence of objective medical evidence, such as medical test results and findings and  physical abnormalities that could produce pain.  In cases where the claimant's subjective pain is supported by objective medical evidence, that the claimant's complaints should be afforded weight.  See *Chrupcala*, 1275.  However, even in cases where there is no objective medical evidence to support claimant's complaint of pain, the complaints are still to be seriously considered.  *Bailey v. Apfel*, 1998 WL 401629, at *6 (E.D.Pa. 1998) (internal citations omitted).

The ALJ found there was no objective medical evidence to support plaintiff's complaint of pain.  The ALJ noted that:

Progress notes, covering the period from February to November 2003, from Dr. John Schibli and Dr. Benjamin Shipton, osteopaths, and the claimant's treating family doctors, report only that the claimant complained of diffuse musculoskeletal pain in the head, back neck, and chest, for which she was prescribed anti-inflammatories, muscle relaxants, and heat. . . .  Physical examination showed only some tenderness of the right trapezius muscles down into the acromioclavicular joint and deltoid, however, with some decreased strength in the right triceps, biceps, deltoid, and bilateral grip. . . . There was no wasting of the thenar or hypothenar eminence, no evidence of carpal tunnel syndrome, no edema of the extremities and normal reflexes.

        *   *   *

Additional progress notes from Dr. Schibli/Shipton show that in, January 2004, the claimant complained of increased pain in her neck, shoulder, mid-thoracic back area, and chest area brought on by lifting at work. . . . Despite the claimant's many complaints, however, physical examination showed only some costochondral tenderness on the right and left sternal borders, as well as some mid-thoracic tenderness. . . . While interim office notes showed that the claimant called in complaining of headaches, other medical records, as well as office notes, report that the diagnostic MRI of the cervical spine had showed only <u>mild</u> bulging discs at C5-6, and C6-7, with no disc herniation, no cord impingement, no displacement, and no foraminal narrowing.  There was no loss of disc height or disc signal intensity, with the claimant's cervical spine results deemed "OK."  Laboratory studies showed no abnormalities, other than high cholesterol, for which the claimant was instructed to start on a low-fat diet.

        *   *   *

[Plaintiff] presented [to Dr. Brossard] as in distress due to pain during examination and had significant muscle spasm in the neck and should region, but only **mild** kyphosis.  Cranial nerve examination was completely normal, and motor testing showed normal bulk and tone, with no drift, tremor, or atrophy.  Strength was normal, except for slightly decreased aponeus polus strength, with Tinel's and Phalen's signs positive at the wrists.  Reflexes were normal and symmetrical, and coordination was normal for finger-nose-finger, rapid alternating movements, arm-roll, and tandem gait.

Tr. 20-25.

As there is no objective medical evidence, the key question becomes whether plaintiff's fibromyalgia, her pain, prevents her from retaining residual functional capacity to work, and conducting this evaluation involves looking to the activities that plaintiff is able to engage in.

Although plaintiff continuously complained of pain, she admitted to being able to watch her grandchildren, grocery shop with the help of her husband, do some of the laundry at home, climb steps, and work 20-25 hours a week, 4-5 days a week.  Based upon the above and the lack of objective medical evidence to establish plaintiff's disability, it becomes evident that the hypothetical question posed to the VE did incorporate all of plaintiff's limitations.

Where a hypothetical question to a VE accurately sets forth all of a claimant's significant impairments and restrictions in activities, physical and mental, as found by the ALJ or as uncontradicted on the medical record, the expert's response as to the existence of jobs in the national economy which the claimant is capable of performing may be considered substantial evidence in support of the ALJ's findings on claimant's RFC.  See e.g. *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002), (internal citations omitted).

In this case, the ALJ asked the VE to consider a hypothetical claimant who is 50 years old, has a high school education and previous work experience such as that of the plaintiff's (sales clerk for Sheetz and produce clerk in a grocery store) but is limited to light work activity and is not able to work around environments that required the operation of foot controls or constant manipulation or with heights, dangerous machinery, and operate motor vehicles.  The VE stated that such a claimant would be able to return to the sales clerk job they previously held. He also stated that there are other sedentary jobs that a claimant with the above limitations could perform such as telephone solicitor (265,000 jobs nationally), security monitor guard (106,000) jobs nationally, receptionist (177,000 jobs nationally) or dispatcher (31,000 jobs nationally).  The ALJ then asked the VE if there would be other light jobs that a claimant could do, if they were not able to do the sales clerk job.  The VE responded that the claimant could work as a general

-26-

sales clerk (280,000 jobs nationally), a walking security guard (319,000 jobs nationally), and hotel clerk (67,000 jobs nationally).  Tr. 57-58.

The Court finds that the ALJ's hypothetical question did incorporate of all plaintiff's impairments as they were supported by the record.  See *Chrupcala*, 829 F.2d at 1276, ( "[a] hypothetical question must *reflect all of a claimant's impairments that are supported by the record*; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence.") (citing *Podedworny v. Harris*, 745 F.2d 210 (3d Cir.1984) and *Wallace v. Secretary*, 722 F.2d 1150 (3d Cir.1983)).  (emphasis added).

Furthermore, Dr. Kar, who reviewed all of plaintiff's record at the behest of the state agency, noted that plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk in about 6 hours in an 8-hour workday, sit for a total of about 6 hours in a 8-hour work day and push and/or pull (including operation of hand and/or foot controls) for an unlimited amount of time.  Tr. 179.  Plaintiff also had no postural, manipulative, visual, communicative, or environmental limitations.  Tr. 180-182.  Dr. Kar also found that although "claimant's statements about her limitations are partially credible [s]ome of the statements like she can lift only 5 lbs. are not credible."  Tr. 187.

Based on the above, the ALJ found that there was medical contradiction against plaintiff's claim of severe mental and physical impairment.  The Court finds substantial evidence of record to support the ALJ's determination that plaintiff was not disabled and therefore did not qualify for SSI and DIB.

-27-

## VI.     Conclusion

The Court has no doubt that plaintiff endures a serious psychiatric impairment which, in combination with her fibromyalgia, must be quite frustrating and difficult at times. Although sympathetic, however, the Court is constrained to conclude, in light of the foregoing standards of review, that the ALJ's findings of fact are supported by substantial evidence on the record as a whole, and his conclusions drawn therefrom are sound.

The Court has reviewed the ALJ's findings of fact and decision, and determines that his finding that plaintiff was not disabled under the Social Security Act is supported by substantial evidence.  Accordingly, the Court will grant the Commissioner's Motion for Summary Judgment, deny Plaintiff's and enter judgment in favor of the Commissioner.


An appropriate order will follow.


   /s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge


cc:      All counsel of record listed on ECF